WhxtakeR, Judge,
delivered the opinion of the court:
This case is before the court on plaintiffs’ motion for rehearing.[1] Upon consideration thereof, it is ordered that the former judgment dismissing plaintiffs’ petition and the conclusion of law be and the same hereby are vacated, the former opinion of March 6, 1957 is withdrawn, and the following opinion and appropriate conclusion of law are substituted therefor.
This case presents the same issue as presented in the case of Roberts, et al. v. United States, ante, p. 797. In both cases a deficiency in estate taxes was asserted because of the inclusion within decedent’s gross estate of property alleged to *814 have been transferred in contemplation of death or by transfer to take effect at death. Each case was compromised while pending in the Tax Court on appeal from the determination of the Commissioner of Internal Revenue. The only difference in the circumstances surrounding the settlement was as follows:
Before this case was settled, the Supreme Court had decided the case of Estate of Spiegel, et al. v. Commissioner of Internal Revenue, 335 U. S. 701, holding that the possibility of the reversion to decedent’s estate of the property transferred in trust by him during his life, although this possibility arose only by operation of law, necessitated the inclusion of the property in decedent’s gross estate.
Of necessity, therefore, the settlement of this issue must have been in the mind of the Commissioner of Internal Revenue, as it was in the Roberts case, supra.
But, strange to say, while the Commissioner of Internal Revenue amended his regulations in certain respects shortly after the decision by the Supreme Court in the Spiegel case, supra, he did not then amend them in accordance with the Supreme Court’s opinion in the Spiegel case, supra, with respect to the possibility of reverter by operation of law issue. His regulations still provided for the exclusion of such property from the gross estate. So, again strange to say, notwithstanding the Supreme Court’s opinion, employees in the Bureau of Internal Revenue were uncertain how to deal with the problem.
In addition, the Act to amend the Internal Revenue Code, as provided in section 7 of the Technical Changes Act, was pending in Congress, and was under consideration by the House Committee, which, a few days after the stipulation was signed, reported it favorably. This section excludes from the estate of a decedent transfers of property which the Supreme Court said should be included. This added to the uncertainty, and a settlement was thought by both parties to be advisable. That this was one of the issues relied on by the Commissioner of Internal Revenue admits of no doubt.
It is clear, also, that there was something to be said on both sides of the argument on the contemplation of death *815 issue. We have adopted the trial commissioner’s findings 21,22,23 and 24. They read:
21. The decedent was bom October 3, 1862. He was therefore approximately 73 years of age when he signed the trust instrument referred to in finding 2 and approximately 81 years of age at the time of his death.
22. _On August 20,1935, the date of the execution of the trust instrument referred to in finding 2, the decedent was in good health and continued so until at or about the time of his sudden death on August 8, 1943. He had never had a serious illness prior to 1943 and died from a fall which may have been caused by a heart attack.
23. The decedent retired about 1935 after having worked in the Post Office Department approximately forty years. He was an active man until the time of his sudden death. After retirement he went fishing, went downtown and played pool, took care of his flower garden and lawn, cleaned and washed his car, and took trips to Houston, Texas, in the winter.
24. The decedent’s son, Clifford Mooers, married a Cuban citizen and this son had one child, a daughter, born of that marriage. Both the decedent and Clifford Mooers were apprehensive that in the event of the death of Clifford Mooers, the latter’s wife might return to Cuba and educate the daughter there, which would have been contrary to the wishes of both the decedent and his son. One of the major considerations for the creation of the trust, referred to in finding 2, was to induce Clifford Mooers’ wife, in the event of Clifford Mooers’ death, through provisions set out in the trust instrument, to remain in the United States and educate their daughter there. In addition, tax consequences entered into the creation of the trust.
It is, therefore, apparent that neither issue was frivolous.
As in the Roberts case, supra, we think the ascription of one-half of the amount paid to the reverter issue comes close to that decision which, in the circumstances, is just to both sides. Plaintiffs’ motion is granted, and plaintiffs are entitled to recover seventy thousand seven hundred twenty nine dollars and forty-seven cents ($70,729.47), with interest as provided by law. Judgment will be entered to that effect.
It is so ordered.
Madden, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
*816 Laramore, Judge, dissents on the basis of his dissenting opinion in Roberts, et al. v. United States, supra.
FINDINGS OF FACT
The court having considered the evidence, the reports of Commissioner Eichard H. Akers, and the briefs and argument of counsel, makes the following findings of fact:
1. The plaintiff is the duly appointed and acting executor of the estate of F. A. Mooers who died on August 8, 1943, and who will sometimes hereinafter be referred to as the “decedent.”
2. August 20, 1935, the decedent created an irrevocable inter vivos trust for his granddaughter, Maria Dolores Mooers. That trust instrument provided in part as follows:
That in consideration of the love and affection that we bear for our son, Clifford Mooers, and our grandchild, Dolores Mooers, and desiring to make provision for the support, maintenance and welfare of our said grandchild and of any other children that may be born to our said son Clifford Mooers, we, F. A. Mooers and E. A. Mooers, the father and mother, respectively, of the said Clifford Mooers, do hereby give, transfer, assign and set over unto the said Clifford Mooers, Trustee, and his successors in this trust, One Hundred Twentx-five (125) shares of the capital stock of Shasta Oil Company, a Delaware Corporation (being all of the capital stock of said corporation now owned by us or either of us) ; the same to be held and disposed of by said Trustee and his successors in this trust for the purposes, upon the trusts and subject to the provisions hereinafter set out, viz:
$ ^ ‡ ‡ ‡
II
Said Clifford Mooers during his lifetime as Trustee shall hold said trust fund in trust for his children, share and share alike; it being intended that the immediate beneficiary of this trust shall be and is our granddaughter, Dolores Mooers, who is the only child of our said son, but that in the event any other child or children shall be born to our said son, then such child or children shall become equal beneficiaries of the trust fund as the same exists at the time of the birth of such child or children ; provided that in the event any child of our said *817 son should predecease him, leaving no issue surviving, then the interest of such deceased child in this trust shall cease and determine and the entire beneficial interest of such deceased child shall revert and belong to the other children of the said Clifford Mooers who shall be the sole beneficiaries; and provided further, that in the event a child of our said son should die leaving issue, prior to the death of said Clifford Mooers, such issue shall be beneficiaries of this trust fund to the extent of the beneficial interest of their deceased parent per stirpes and not per capita; and provided further, that in the event of the death, prior to the death of the said Clifford Mooers, of all of the children and issue of deceased children of the said Clifford Mooers — that is to say, if at any time prior to the death of the said Clifford Mooers there should not be living any child or grandchild of the said Clifford Mooers — men this trust shall cease and determine and the trust fund shall become the absolute property of our said son Clifford Mooers. It is our intention that during the lifetime of said Clifford Mooers he shall own and hold the legal title to this trust fund in trust for his living children and grandchildren as they may be in existence from time to time, per stirpes and not per capita, but that if a time should come prior to the death of the said Clifford Mooers when there is no living beneficiary of this trust, that is to say, no child or grandchild of the said Clifford Mooers living, then that this trust shall terminate and the trust fund be the absolute property of the said Clifford Mooers.
Ill
During his lifetime the said Clifford Mooers, Trustee, may in his uncontrolled discretion pay over to the beneficiary or beneficiaries, or any of them, or expend for her and/or their support, maintenance, education and welfare,, as he may deem best, any or all of the income from this trust fund; and if, in his opinion the income is insufficient, he may in his uncontrolled discretion pay over to such beneficiary or beneficiaries, or to any one or more of them, or expend for her and/or their support, maintenance, education and welfare, any part of the principal of this trust fund as he may deem best; and he shall not be required to make such payments or expenditures equally as between the beneficiaries, but is hereby .expressly empowered to discriminate among the beneficiaries in making payments or expenditures, whether out of income or principal, his discretion being *818 absolute; and neither the Trustee nor any beneficiary shall ever be called upon to account to any other beneficiary or to any heir or representative of any other beneficiary by reason of any inequality as among the beneficiaries in the disbursements made by the Trustee from the trust fund, whether of income or principal.
IV
Upon the death of our said son, Clifford Mooers, leaving a child or children, or issue of a deceased child or children, surviving him who are beneficiaries of the trust hereby created, the Republic National Bank and Trust Company of Dallas, Texas, is hereby designated as Trustee and shall succeed to all the rights and titles of the said Clifford Mooers as Trustee in and to the trust fund as it then exists, subject to the provisions hereinafter set forth, and shall hold and dispose of said trust fund as follows:
Y
Said Bank Trustee shall proceed as soon and as speedily as practicable after the death of said Clifford Mooers to reduce the trust fund to cash or its equivalent and invest the whole thereof in bonds of the United States Government and/or bonds and obligations guaranteed by the United States Government; and said Bank Trustee is granted full power and authority to sell, mortgage, trade or incumber or dispose of, in whole or in part, the trust fund as it exists at the date of the death of the said Clifford Mooers, for the purpose of converting the same into cash or its equivalent, and investing the whole thereof in bonds of the United States Government and/or bonds and obligations guaranteed by the United States Government, and said Bank Trustee shall keep the principal of the trust fund from time to time remaining in its hands invested in bonds of the United States Government and/or bonds and obligations guaranteed by the United States Government. However, said Bank Trustee shall not be required to sacrifice unduly any property in order to convert the same into cash or its equivalent but shall have such time therefor as it considers necessary.
VI
The trust fund as it exists at the date of the death of the said Clifford Mooers, after being converted into cash and invested as set out in the preceding paragraph, *819 shall be divided by said Bank Trustee in as many equal parts as necessary so that there shall be one such part for each child of the said Clifford Mooers who survives him, and for each child of the said Clifford Mooers who predeceased him but leaves issue surviving at the time of the death of the said Clifford Mooers. One such share shall be held by said Bank Trustee in trust for each child of the said Clifford Mooers who survives him and one such share shall be held by said Bank Trustee in trust for the issue of each child of the said Clifford Mooers who predeceases him but leaves issue surviving at the time of the death of said Clifford Mooers, such share to be held in trust for the issue of such deceased child in equal shares.
YII
The share of each beneficiary as provided in the preceding paragraph shall be treated and accounted for by said Bank Trustee as a separate trust fund and held and disposed of as follows:
The income from the trust fund in the case of each beneficiary shall during the minority of such beneficiary be paid over to Magdalena Dolores Mooers, wife of the said Clifford Mooers, or if she be not living then to the legal guardian of such beneficiary, to be used by her for the maintenance, support and education of said beneficiary until such beneficiary reaches his or her majority. Thereafter, the income shall be paid over to such beneficiary ; provided that the principal of said trust fund shall be disposed of as follows:
There shall be paid over to each male beneficiary twenty-five (25%) percent of the principal of his trust fund when he has received a degree in some accredited college or university in the United States; and there shall be paid over to him one-third (%) of the remainder of his trust fund upon his attaining the age of 30 years; and there shall be paid over to him one-half (%) of the remainder of his trust fund upon his attaining the age of thirty-five (35) years, and the entire balance of his trust fund upon his attaining the age of forty (40) years.
There shall be paid over to each female beneficiary twenty-five (25%) per cent of the principal of her trust fund upon her marriage, or upon her attaining the age of twenty-five (25) years unmarried; and there shall be paid over to her one-third (%) of the remainder of her trust fund upon her attaining the age of thirty (30) years; and there shall be paid over to her one-half of *820 the remainder of her trust fund upon her attaining the age of thirty-five (35) years, and the entire balance of said trust fund upon her attaining the age of forty (40) years.
Anything herein to the contrary notwithstanding, the ti'ust hereby created shall wholly cease and terminate upon the expiration of twenty-one (21) years from and after the death of the said Clifford Mooers, and at said time the Trustee shall pay over to the several beneficiaries as they then exist their respective shares and portions of the principal of this trust.
VIII
In the event any of the beneficiaries of this trust surviving at the time of the death of the said Clifford Mooers should die prior to the termination of this trust and before attaining the age of forty (40) years, then upon such death the principal of said child’s trust fund remaining in the hands of said Bank Trustee shall be paid over as follows:
In the event such beneficiary dies leaving a widow or husband surviving and/or issue, same shall be paid over to said surviving widow or husband and/or issue, share and share alike. In the event such beneficiary dies leaving no widow or husband surviving and no issue surviving, then the same shall become a part of the trust funds held by said Bank Trustee for the other beneficiaries proportionally. But in the event no such beneficiary survives such deceased beneficiary, then the principal of such deceased beneficiary’s trust fund remaining in the hands of said Bank Trustee shall belong to and be paid over to the lawful heirs of our said son, Clifford Mooers, according to the laws of descent and distribution of the State of Texas.
$ * $ $ $
XII
Anything herein contained to the contrary notwithstanding, we expressly direct and it is made a condition and provision of this trust that no beneficiary of any of the trusts hereinbefore established shall be paid any amount by said Trustee prior to the termination of this trust, either of income or principal, so long as such beneficiary is residing outside of the limits of the United States of America. During the period that any beneficiary may reside outside of the United States all in *821 come or other amounts which under the preceding provisions hereof would otherwise be paid over by the Trustee to or for the benefit of any such beneficiary shall not be accumulated as income but shall be added to the principal of such beneficiary’s trust fund and retained by the Trustee and disposed of as herein provided for the principal of such trust fund and we expressly direct that the funds provided in this trust for the education of any beneficiary hereunder shall be expended only in the United States, that is to say, the beneficiary must receive his or her education in American institutions of learning situated within the boundaries of the United States of America; provided that in the event of the death of all of the children of the said Clifford Mooers, either before or after his death, then and thereupon the restriction as to residence imposed by this paragraph shall become null and void.
During his lifetime the decedent transferred to that trust securities which, at the date of his death on August 8, 1943, had a value of $621,505.97.
3. After the decedent’s death on August 8,1943, the plaintiff timely filed a Federal estate tax return for the decedent’s estate and paid the tax shown due thereon in the amount of $48,905.61. The plaintiff did not include in that return as a part of the decedent’s gross estate the securities which were referred to in the preceding finding as having been transferred under the trust agreement dated August 20, 1935. Likewise the plaintiff did not include in that return, as a part of the decedent’s gross estate, the value at the decedent’s death of 250 shares of the capital stock of the Shasta Oil Company which were donated by the decedent to that company in 1934; and also did not include in that return, as a part of the decedent’s gross estate, an amount of $87,000, consisting of $16,000 in cash and $71,000 representing the value of a one-half interest in certain notes of the Shasta Oil Company which were transferred by the decedent to his son (plaintiff) in the year 1940.
4. On September 5,1947, after an examination and report by a revenue agent, a fifteen-day letter was issued to the plaintiff proposing a deficiency in estate tax of $670,400.62. On October 21,1947, the Commissioner of Internal Kevenue, through the internal revenue agent in charge at Seattle, *822 gave formal notice by registered mail to the plaintiff of his final determination of a deficiency in estate tax of the same amount as set out in the letter of September 5,1947, namely, $670,400.62. The principal items on account of which that deficiency was computed were the following additions to the gross estate of the decedent :
(a) The value at the decedent’s death of 250 shares of Shasta Oil Company stock which was donated by the decedent to that company in 1934, $725,000;
(b) The value at the decedent’s death of the securities which were referred to in finding 2 as having been transferred to the trust dated August 20,1935, $621,505.97;
(c) The donation of cash and interest in a promissory note which was made by the decedent to his son in 1940 in the amount of $87,000.
Another item in the deficiency arose by reason of the fact that there was included in the return only one-half of the value of certain community property whereas the revenue agent included the total value of such property.
With respect to items (a) and (c), the following reason was given for their inclusion in the gross estate:
The value of the above-described property, transferred by the decedent in his lifetime, is included in the gross estate, it being determined that such transfers were made in contemplation of death and come within the provisions of section 811 (c) of the Internal Eevenue Code.
The reason given for the inclusion of item (b) was:
This transfer is included in the gross estate, it being determined that such transfer was made in contemplation of death, intended to take effect in possession or enjoyment at decedent’s death, and comes within the provisions of section 811 (c) of the Internal Eevenue Code.
Approximately $220,000 of the deficiency was attributable to the inclusion in the decedent’s gross estate of item (b).
5. At the time of the issuance of the letter of September 5, 1947, Tracy E. Griffin, an attorney of Seattle, Washington, was attorney of record for the decedent’s estate in King *823 County, Washington. Sine© Mr. Griffin was not actively engaged in Federal tax practice, he advised the executor to employ an experienced tax lawyer and, on that advice, the plaintiff engaged Frank L. Mechem as tax counsel to contest the proposed deficiency in estate tax. Thereafter, in September 1947, the executor, Clifford Mooers, Messrs. Griffin and Mechem, and Messrs. Arne S. Hansen, Harold L. Scott, and C. C. Parfet, certified public accountants, met in Wichita Falls, Texas, to confer, review, and discuss all the adjustments in the revenue agent’s report which had formed the basis of the proposed deficiency. It was the consensus of opinion at that conference that the plaintiff should be able to meet the contemplation of death issues as raised in the letter but the parties were concerned about the possibility of reverter issue as it applied to the 1935 transfer in trust and referred to in the preceding finding as item (b). At that time there were pending in the United States Supreme Court two cases commonly known as the Spiegel[1] and Church[2] cases in which an issue was involved similar to that just referred to, namely, the taxability of transfers in trust where a possibility of reverter remained in the donor.
After the conference, Mr. Mechem made a further investigation of the facts regarding issues (a), (b) and (c) (see finding 4) ; and, after conferences with his law partners and associates, reached substantially the same conclusion as had been reached at the original conference in Wichita Falls.
Items, other than the three just mentioned, including a community property item, accounted for some $103,000 of the deficiency. The plaintiff conceded the correctness of the Commissioner’s determination on these items and, in order to stop the running of interest thereon, paid that amount of the deficiency at or about the time he filed a petition in the Tax Court with respect to items (a), (b) and (c).
6. On January 6, 1948, within ninety days from the date of the Commissioner’s notice of deficiency dated October 21, 1947, the plaintiff timely filed with the Tax Court of the United States a petition for a redetermination of the de *824 ficiency in estate tax. Paragraph 4 of that petition read in part as follows:
4. The determination of tax contained in the said deficiency notice is based upon the following errors:
(a) The Commissioner of Internal Revenue erred in determining that the donation of 250 shares of Shasta Oil Company stock to the Company by F. A. Mooers, deceased, in the year 1934 constituted a gift in contemplation of death and for that reason was includible in the gross estate of decedent.
(b) The Commissioner of Internal Revenue erred in determining that a gift in trust of 125 shares of Shasta Oil Company stock made by F. A. Mooers and Edith A. Mooers, his wife, in the year 1935, was a gift in contemplation of death and for that reason includible in the gross estate of decedent.
(c) The Commissioner of Internal Revenue erred in determining that the gift in trust described in subpara-graph (b) of this paragraph 4 was intended to take effect in possession or enjoyment at decedent’s death and for that reason was includible in the gross estate of decedent.
(d) The Commissioner of Internal Revenue erred in determining that a donation of $87,000, by F. A. Mooers, deceased, and Edith Mooers, his wife, made to Clifford Mooers and Dolores Mooers in the year 1940 was a gift in contemplation of death and includible in the gross estate of the decedent.
The Commissioner timely filed with the Tax Court his answer to the plaintiff’s petition in which he denied the allegations of error contained in paragraph 4 of the plaintiff’s petition as set out above.
7. After the filing of the petition referred to in the preceding finding, the case was placed on the Seattle calendar of the Tax Court and scheduled to be heard on June 13, 1949. Prior to the scheduled hearing date, conversations were had and conferences held between representatives of the Commissioner and the plaintiff to develop the issues, prepare a stipulation of facts and, if possible, settle the case. Such conversations were had and conferences held by telephone and in person during the period beginning about November 22,1948, and continuing through June 9,1949. In these conversations and conferences the representative for the plain *825 tiff was Frank L. Mechem, and the principal representative for the Commissioner was James S. Chalmers, who was a technical adviser on the Technical Staff of the Bureau of Internal Bevenue, Seattle, Washington. At the time of these conversations and conferences and continuing until January 17, 1949, there were still pending in the United States Supreme Court the Spiegel and Ohureh cases referred to in finding 5.
8. At a conference on November 22, 1948, at which the plaintiff was represented by Mr. Mechem and the Commissioner by Mr. Chalmers, heretofore referred to, and Mr. Nash of the Technical Staff and Mr. Payne of the Chief Counsel’s Office, Bureau of Internal Bevenue, the parties discussed in chronological order the three transfers referred to in finding 4 above as items (a), (b), and (c), which had not been included in the estate tax return. With respect to the 1935 transfer in trust, the parties first discussed the possibility of reverter issue and then the contemplation of death issue in connection with the same transfer. At the conference the position of the parties with respect to the issues was fully discussed but no conclusions were reached by either side. At least the Government representatives did not communicate their conclusions, if any had been arrived at, to the representative of the taxpayer. This conference was largely of an exploratory nature. At that time the Spiegel and GJmreh cases had been argued and reargued before the Supreme Court and were then pending for decision.
9. A pother conference was held on December 8, 1948, at which the plaintiff was represented by Mr. Mechem and the Commissioner by Messrs. Chalmers and Payne, heretofore referred to. At the time of this conference, the representatives of the plaintiff had furnished to the representatives of the Commissioner a substantial amount of documentary evidence on the contemplation of death issue as it applied to all three transfers. That evidence included an affidavit by the plaintiff, Clifford Mooers, and an affidavit by C. C. Parfet, a certified public accountant, who had charge of the books of the Shasta Oil Company and who was familiar with the three transactions. In these affidavits, which were received in evidence in this proceeding to show what was *826 before the Commissioner at the time of the settlement negotiations, it was stated that the purpose and motive behind each of the transfers was associated with life rather than with death. With regard to the 1935 transfer in trust, it was stated in these affidavits that the motive behind the transfer was to induce Clifford Mooers’ wife (in the event of Clifford Mooers’ death) to remain in the United States and educate their daughter, Maria, in the United States. In the plaintiff’s affidavit, it was further stated that the decedent was in good health at the time of each of the transfers and continued so until his sudden death.
Mr. Payne took the position at this conference that the Spiegel case controlled the 1935 transfer in trust and for that reason, entirely aside from any evidence which may have been produced on the question of contemplation of death, the entire amount of the transfer should be included in the decedent’s gross estate. Mr. Chalmers agreed with the position taken by Mr. Payne. Mr. Mechem urged that regardless of the decision in the Spiegel case by the Court of Appeals for the Seventh Circuit, which was opposed to the plaintiff’s position, the representatives of the Commissioner were bound by his regulations which at that time would have permitted the exclusion of that transfer from the decedent’s gross estate on the possibility of reverter issue. Since Mr. Mechem was apprehensive that the Supreme Court might affirm the Spiegel case, which would make it more difficult to secure a favorable settlement, he endeavored to get the case settled before the Supreme Court rendered its decision. No conclusion was reached by either party at this conference.
10. Subsequent to the conference of December 8,1948, Mr. Mechem had several telephone conversations with Mr. Chal-mers about the possibility of reaching a settlement in the case. Mr. Chalmers advised him that the head of the Technical Staff had taken an interest in the case and nothing further could be done until he had had an opportunity to review the case. These conversations covered a period from December 8,1948, until the middle of January 1949. During that period Mr. Mechem requested an opinion from an attorney in Washington, D. C., on two points: (1) whether an early decision might be expected in the Spiegel case; and *827 (2) Ms opinion as to what the Supreme Court might be expected to hold in that case. The attorney replied that an early decision was expected and he was of the opinion that the decision of the United States Court of Appeals for the Seventh Circuit would be affirmed.
11. On January 17, 1949, the Supreme Court announced the decision in the Spiegel case which affirmed the decision of the Court of Appeals and held that trust property was included in a decedent’s gross estate if there was a possibility of reverter by operation of law in the donor. After that decision, Mr. Mechem had another conversation with Mr. Chalmers in an effort to proceed with the settlement discussions. At that time Mr. Chalmers stated that it would be impossible to consider any settlement discussion until the Commissioner had had an opportunity to study the Spiegel case and also to consider what might be done about his own regulations, and that pending some further action by the Commissioner, settlement negotiations could not be continued.
12. Subsequently and prior to June 1949, settlement negotiations were resumed between Mr. Mechem and Mr. Chal-mers. In these later negotiations, the main subject of discussion was the Spiegel case and the 1934 and 1940 transfers (items (a) and (c) of finding 4) were not discussed. As a result, it was Mr. Mechem’s understanding that he and Mr. Chalmers had gotten to the point in their settlement negotiations where the issues of contemplation of death and possibility of reverter by operation by law in connection with the 1935 trust were all that remained to be settled.
13. Shortly prior to the time that the case was set for hearing before the Tax Court of the United States, on June 13, 1949, Mr. Chalmers suggested to Mr. Mechem that if an offer was made to settle the case by paying an additional deficiency of approximately $110,000, he would recommend the offer of settlement to his superiors for approval but stated that in view of the Spiegel decision he did not know whether he could get such an offer approved. Pursuant to that suggestion the plaintiff submitted such an offer which, if accepted, was intended to effect a settlement of the entire Tax Court case. The amount of the offer was approximately *828 one-half of the amount of estate tax attributable to the inclusion in the decedent’s gross estate of the transfers to the 1935 trust.
14. In connection with the plaintiff’s foregoing offer of settlement, Mr. Chalmers submitted a detailed action memorandum to the head of the division of the Technical Staff in which he outlined the issues involved and made his recommendation for the acceptance of the offer. With respect to the transfer by the decedent in April 1934 of 250 shares of the Shasta Oil Company stock, Mr. Chalmers concluded his discussion of this issue with the following statement:
In view of the foregoing, it is believed that it would be almost impossible to sustain a finding to the effect that the transfer involved in this issue constitutes a transfer in contemplation of death, and therefore this issue should be conceded.
With respect to the donation made by the decedent in 1940 to plaintiff in the amount of $87,000, Mr. Chalmers, after discussing the evidence that might be adduced on this point, concluded as follows:
* * * while these two factors do indicate that there is some doubt as to whether the real purpose of this gift was to assist Clifford Mooers in building the home, there is no evidence of any kind in the record to refute the testimony of Clifford Mooers and it is believed that his testimony would be sufficient to overcome the presumption of correctness which attaches to the Commissioner’s determination. Accordingly, it is believed that this issue should be conceded.
15. In the memorandum referred to in finding 14, Mr. Chalmers discussed the 1935 transfer in trust under two considerations, namely, possibility of reverter, and contemplation of death. In the discussion with respect to the possibility of reverter issue, the following statements appear in his memorandum:
The decedent’s widow and Clifford Mooers’ wife were both living at the date of decedent’s death. The decedent had no children other than Clifford and Clifford has never had any children other than his daughter, Dolores. Under the laws of descent and distribution of the State of Texas the decedent was an heir of his son, *829 Clifford. See Vernon’s Texas Statutes 1939, Articles 2570 and 2571. It is apparent that in the event Clifford Mooers had predeceased the decedent, leaving no child other than Dolores and she had subsequently died without issue before termination of the trust, there was a possibility that the decedent might regain some part or all of the property, whether he received part of [sic] all being contingent upon the further possibility that Clifford’s wife and the decedent’s wife might also predecease him.
$ ‡ ‡
It is apparent that the provision of the trust agreement whereby the corpus of the trust was to become the absolute property of Clifford Mooers if at any time prior to his death there should not be living any child or grandchild brings this case squarely within example 2 above [Commissioner’s regulations]. It is also apparent that the provision for the payment of principal to the beneficiary at designated ages, the final payment to be made at age 40, brings this case squarely within example 4 above [Commissioner’s regulations]. Accordingly, it would necessarily follow that the corpus of this trust is not includible in the gross estate as a transfer intended to take effect at or after the decedent’s death if the above-quoted regulations are applicable.
Prior to the date of the recent decisions of the Supreme Court of the United States in Comm. v. Church, 325 U. S. 632, and Spiegel v. Comm., 325 U. S. 701, there was no question but that the above-quoted provisions of the regulations were applicable and therefore no part of the corpus of this trust was includible in the gross estate as a transfer intended to take effect at or after death. However, the decision of the Supreme Court in the Spiegel case contains language which is so broad as to indicate that the mere fact that there was any possibility that the decedent might regain some part or all of the property, whether it be in the form of a possibility of reverter or otherwise, the corpus of the trust is includible in the gross estate. Accordingly, action on this case was deferred, pending receipt of advice as to whether the regulations might be amended to eliminate examples (2) and (4) quoted above.
Under date of April 13, 1949, the proposed amendments to the regulations were issued but this proposal specifically provides that no amendments will be necessary in order to reflect the Spiegel case. The amendments to be made in connection with the Church case *830 will not affect the instant case in any way. Although the amendments to the regulations are not yet final it seems apparent that there is little or no possibility that any change will be made with respect to the Spiegel case, and therefore any attempt to include the trust corpus in the gross estate in this case would be directly contrary to the regulations.
He concluded his discussion on the contemplation of death issue as follows:
It seems apparent that, on the authority of the above-cited cases, the correspondence in question could not be introduced in evidence over the objection of counsel for the petitioner, and that it probably would be necessary to rely almost entirely on the testimony of Clifford Mooers in order to establish the motive for the transfer. As indicated hereinbefore, his testimony will be to the effect that the transfer was intended to provide an incentive to his wife to remain in this country and to educate her daughter here, and this testimony is borne out to some extent by the specific provisions of the trust agreement.
Despite the foregoing, however, it is believed that a fairly strong argument can be made that this transfer was testamentary in character in that it constituted approximately 50% of the decedent’s entire estate and was made at a time in the decedent’s life when he was considering the manner in which he would dispose of his estate at his death. Whether or not this argument would carry sufficient weight to overcome the testimony of Clifford Mooers is doubtful, but it is apparent that this issue cannot be conceded in its entirety.
Mr. Chalmers’ recommendation for the acceptance of the offer read as follows:
The petitioner’s proposal for settlement on the basis of a net deficiency of $110,028.48 contemplates the inclusion in the gross estate of approximately 60% of the value of the corpus of the trust involved in Issue No. 2. Since it is apparent that there is little or no chance of sustaining the inclusion of the transfers involved in Issues Nos. 1 and 3, it is believed that this proposal adequately reflects the trial possibilities of the case as a whole.
Mr. Chalmers’ recommendation was never shown the plaintiff’s representatives. It was a recommendation to the *831 bead of tbe division of the Technical Staff in Seattle, who transmitted it to the division counsel with a favorable recommendation.
16. On June 21, 1949, the parties entered into a stipulation which they executed and filed with the Tax Court of the United States, in which they agreed upon a deficiency in estate tax of $110,028.48 and consented to the Tax Court’s entry of its decision in that amount.
On July 13, 1949, the Tax Court entered the following decision:
Under written stipulation signed by counsel for the parties in the above-entitled proceeding and filed with the Court on June 21,1949, at Tacoma, Washington, it is Okdeeed and Decided: that there is a deficiency of $110,028.48 in estate tax.
17. On November 16,1949, the plaintiff paid the amount of the judgment, $110,028.48, plus interest in the amount of $31,430.46. No petition for review having been filed, the Tax Court decision became final on October 13, 1949.
18. The Spiegel case was decided by the Supreme Court on January 17, 1949. On October 25, 1949, section 811 (c) of the Internal Eevenue Code was amended by section 7 (a) of Public Law No. 378 which provided, among other things, that property with respect to which a decedent had only a possibility of reverter by operation of law should not be included in the decedent’s gross estate for estate tax purposes. This amendment was made retroactive to estates of decedents dying after February 10, 1939, and to transfers made on, before, or after February 26, 1926, and the amendment further provided for refunds of all estate tax paid in connection with estates of decedents dying after February 10, 1939, by reason of the inclusion in such decedents’ gross estates of property with respect to which they had only a possibility of reverter by operation of law, provided a refund claim was filed within one year from the effective date of the amendment.
19. On December 13, 1949, the plaintiff filed a claim for refund of $110,028.48 in estate tax, together with interest thereon of $31,430.46, which had been paid in accordance *832 with the decision of the Tax Court entered July 13, 1949. The claim set out the following ground therefor:
The amount of $110,028.48 for which refund is claimed was paid to the Collector of Internal Revenue pursuant to a decision of the Tax Court entered July 13, 1949, in the case of Estate of F. A. Mooers, Clifford Mooers, Executor v. Commissioner, Docket No. 16941. The amount of the additional tax so determined was attributable to the inclusion in decedent’s gross estate of property with respect to which decedent had a possibility of reverter by operation of law. Section 7 oí H. R. 5268 authorizes claim for refund.
This claim is filed by Clifford Mooers, Executor, who also filed the estate tax return. He is still acting as Executor of the estate.
20. On October 13, 1950, the Commissioner notified the plaintiff of the rejection of the claim for refund in a letter which read in part as follows:
A review of the case discloses that the property involved was included in the decedent’s gross estate on the ground that it was transferred by him in contemplation of death within the meaning of section 811 (c) of the Internal Revenue Code. The transfers were not included for tax upon the ground that the decedent or his estate had a reversionary interest in the property transferred. Therefore, the provisions of Public Law 378 of the 81st Congress do not apply to this case.
As Public Law 378 does not apply to this case, the refund claim is barred by section 911 of the Internal Revenue Code which provides in substance that, with certain exceptions not applicable here, if the Commissioner has mailed to the executor a notice of deficiency and the executor files a timely petition with the Tax Court, no refund in respect of the tax shall be allowed or made and no suit for the recovery of any part of such tax shall be instituted in any court.
21. The decedent was born October 3,1862. He was therefore approximately 73 years of age when he signed the trust instrument referred to in finding 2 and approximately 81 years of age at the time of his death.
22. On August 20, 1935, the date of the execution of the trust instrument referred to in finding 2, the decedent was in good health and continued so until at or about the time *833 of Ms sudden death on August 8, 1943. He had never had a serious illness prior to 1943 and died from a fall which may have been caused by a heart attack.
23. The decedent retired about 1935 after having worked in the Post Office Department approximately forty years. He was an active man until the time of his sudden death. After retirement he went fishing, went downtown and played pool, took care of his flower garden and lawn, cleaned and washed his car, and took trips to Houston, Texas, in the winter.
24. The decedent’s son, Clifford Mooers, married a Cuban citizen and this son had one child, a daughter, born of that marriage. Both the decedent and Clifford Mooers were apprehensive that in the event of the death of Clifford Mooers, the latter’s wife might return to Cuba and educate the daughter there, which would have been contrary to the wishes of both the decedent and his son. One of the major considerations for the creation of the trust, referred to in finding 2, was to induce Clifford Mooers’ wife, in the event of Clifford Mooers’ death, through provisions set out in the trust instrument, to remain in the United States and educate their daughter there. In addition, tax consequences entered into the creation of the trust.
25. The documentary evidence, including affidavits referred to in finding 9 as having been submitted to the representatives of the Commissioner in connection with the settlement here in question, was substantially to the same effect as the foregoing findings 21 to 24, inclusive, set out above.
26. At the time of the settlement in question Wilford H. Payne was counsel in charge of the Seattle office of the Internal Eevenue Bureau. His duties were to supervise the legal work in that office, especially the trial of cases before tiie Tax Court. J. B. Harlacher was head of the Technical Staff in the same office. In order for a case to be settled it was necessary for both of these individuals to approve it.
27. During the period from the time the Tax Court proceeding was instituted until the final settlement, the question whether the corpus of the trust created in 1935 was includible in the decedent’s gross estate was discussed at various *834 times by Mr. Chalmers and Mr. Payne and other representatives of the Commissioner’s office in Seattle. Throughout these discussions these representatives of the Commissioner were cognizant of the Commissioner’s regulations which, in their opinion, would have permitted the exclusion of the corpus of this trust from the decedent’s gross estate. They were also of the opinion that it might be very difficult to sustain the inclusion of the corpus of the trust in the decedent’s gross estate on the ground of contemplation of death. However, in their discussions with the representatives of the plaintiff they did not concede that the corpus of the trust should be excluded on either ground.
28. After the decision by the Supreme Court in the Church and Spiegel cases, Mr. Payne wrote a letter to the chief counsel of the Bureau of Internal Eevenue on February 28, 1949, in which he referred to various provisions of the 1935 trust and inquired whether, in view of the broad language used in those decisions, there was any proposal pending to eliminate those provisions of the regulations which, in his opinion, would permit exclusion of the corpus of the 1935 trust from the decedent’s gross estate by reason of the possibility of reverter by operation of law. On May 3,1949, Mr. Payne wrote a memorandum to Mr. Harlacher in which he referred to his letter of February 28, 1949, to the chief counsel and stated, among other things, that while he understood the Commissioner was proposing to amend his regulations based on the Ghurch decision, he further understood that the Commissioner considered no amendment was required as a result of the Spiegel case. After a further discussion of the trust and the regulations, he stated:
It is significant that despite the sweeping language of the two decisions, the Commissioner now proposes to amend the existing regulations only in minor respects, particularly as regards the application of the Church decision and the elimination of the provision in the regulations regarding retention of a life estate which resulted from the prior decision of the Supreme Court in May v. Heiner. So far as the Examples 1, 2 and 4 of T. t). 5512 are concerned, they are left undisturbed. Under such examples we are prevented from including in the gross estate the trust with respect to the 125 shares of stock in question in the Mooers case as a trans *835 fer intended to take effect in possession and enjoyment at or after death.
Neither the letter of February 28,1949, nor the memorandum of May 3, 1949, referred to above, was shown to or made available to plaintiff’s representatives.
29. Prior to the decision by the Supreme Court in the Spiegel case, Mr. Mechem and Mr. Chalmers had given some consideration to a proposal by Mr. Mechem for the settlement of the case by the inclusion in the decendent’s gross estate of 50 percent of the value of the corpus of the 1935 trust which would have resulted in a tax of approximately $91,000. While Mr. Chalmers was ready to recommend a settlement on that basis, Mr. Payne had not arrived at any definite conclusion in the matter.
30. As shown in findings 11, 12, and 13, negotiations for settlement were suspended from about the time the Supreme Court announced its decision in the Spiegel case on January 17, 1949, until the early part of June 1949. During that period as well as prior thereto, the plaintiff’s representatives were confident they could show that the 1935 trust was not created in contemplation of death. Prior to the Spiegel decision, as likewise shown in those findings, the plaintiff’s representatives were apprehensive that the Supreme Court might decide that case in the way it was decided, which would make it more difficult to secure a favorable settlement and, after the Spiegel decision, the principal arguments left to them on that issue were possible distinguishing features in this case as compared with the Spiegel case and the provisions of the Commissioner’s regulations, heretofore referred to, which remained unchanged up to the time the offer of settlement in question was made and accepted.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiffs are entitled to recover, and it is therefore adjudged and ordered that they recover of and from the United States the sum of seventy thousand seven hundred twenty-nine dollars and forty-seven cents ($70,729.47), with interest as provided by law.

 This suit was originally instituted by Clifford Mooers, as Executor of the Estate of E. A. Mooers. By order of the court, dated May 3, 1957, the present plaintiffs were substituted as parties plaintiff.

 Estate of Spiegel et al. v. Commissioner of Internal Revenue, 335 U. S. 701.

 Commissioner of Internal Revenue v. Estate of Church, 335 U. S. 632.